UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, McCullough and Senior Judge Haley
Argued at Fredericksburg, Virginia

TARA LYNNE MARTINI

                                              MEMORANDUM OPINION[*] BY
v.      Record No. 0392-15-4          JUDGE ROBERT J. HUMPHREYS
                                               MARCH 8, 2016

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David S. Schell, Judge[1]

Jessica Newton, Assistant Public Defender, for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Tara Martini ("Martini") appeals her conviction for driving while intoxicated ("DWI"),

second offense within ten years, in violation of Code § 18.2-266. Martini claims the circuit court

erred in denying her motion for a court reporter and her various motions to suppress the

evidence. Additionally, Martini asserts the evidence was insufficient to support her conviction.

Request for Court Reporter

Martini first argues that the circuit court erred by denying her request for a court reporter

to be provided at the court's expense for all motion hearings and the jury trial. Martini claims

that her due process rights were violated because transcripts of her pre-trial proceedings were

necessary to prepare for trial and to impeach witnesses at trial and because such transcripts were

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge Charles J. Maxfield ruled on Martini's motion for a court reporter. Judge R. Terrence Ney decided Martini's motion to suppress her statements to police and the arrest. Judge Jane Marum Roush ruled on Martini's motion to suppress the certificate of blood analysis.

necessary for an "adequate" appeal. "On appeal, constitutional arguments present questions of law that this Court reviews de novo." Crawford v. Commonwealth, 281 Va. 84, 97, 704 S.E.2d 107, 115 (2011).

The Supreme Court of the United States has recognized "constitutional guarantees of due process and equal protection" in holding that indigent defendants are entitled to the basic tools necessary to prepare an adequate defense or appeal when those tools are available to others for a price. Griffin v. Illinois, 351 U.S. 12, 17 (1956). The Supreme Court of Virginia subsequently held that refusing an indigent defendant a free transcript of the trial court record in order to perfect an appeal constituted a denial of fundamental constitutional rights. Cabaniss v. Cunningham, 206 Va. 330, 334-35, 143 S.E.2d 911, 913-14 (1965). Later, the Supreme Court of the United States clarified that, "the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal." Britt v. North Carolina, 404 U.S. 226, 227 (1971). The Britt Court concluded that where the defendant had "an informal alternative which appear[ed] to be substantially equivalent to a transcript," the lower court did not err in denying him a free transcript. Id. at 230. "In determining whether a defendant needs a free transcript, two factors are relevant: '(1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript.'" Anderson v. Commonwealth, 19 Va. App. 208, 211, 450 S.E.2d 394, 396 (1994) (quoting Britt, 404 U.S. at 227).

In this case, the value of a transcript to Martini is not contested by the Commonwealth. Instead, the key inquiry is whether an alternative device was available and fulfilled the same function as a transcript. The circuit court allowed Martini's counsel to audio record any proceedings in the case using her own recording device. The majority of the proceedings related

- 2 -

to Martini's case were in fact recorded by counsel, with the exception of one hearing that was recorded by the recording system in the courtroom, and portions of the proceedings that were not recorded when Martini's recorder stopped working. Importantly, Rule 5A:8(c) permits a statement of facts to be used in lieu of transcripts on appeal. The parties can submit written facts to the circuit court, which can address objections to the facts by the parties and approve a final statement of facts. See Rule 5A:8(c)-(d); see also Houghtaling v. Commonwealth, 209 Va. 309, 315, 163 S.E.2d 560, 564 (1968) (holding a narrative statement was sufficient for appellate review and "defendant was not prejudiced by the failure to record" closing arguments).

On April 9, 2015, Martini noted her appeal in circuit court and filed a proposed statement of facts pursuant to Rule 5A:8. In response, the Commonwealth submitted a proposed statement of facts as well as the audio recordings of the pretrial hearings and trial. After a hearing, the circuit court approved a statement of facts, which has been provided to this Court. To the extent the parties disputed the statement of facts, the audio recordings made by Martini, the courtroom recordings, and the personal notes and memories of the parties were available to the circuit court to resolve any disputes. Although Martini contends, on brief, that the statement of facts was "highly contested by the parties," Martini had only minor non-substantive objections to the prosecutor's proposed statement of facts, which arguably provided more detail than the statement of facts submitted by Martini.

Notably, Martini did not object to the final statement of facts approved by the circuit court below, nor did she specify in her brief why the statement of facts that was presented to this Court was inadequate for appellate review. See Dickerson v. Commonwealth, 36 Va. App. 8, 13, 548 S.E.2d 230, 232-33 (2001) (holding that a statement of facts was sufficient for appellate review because even though the appellant had objected to the use of a statement of facts "as a remedy for the failure to record the testimony at trial," the appellant "failed to object to the

completeness or accuracy of the statement of facts" and did not "specify why the statement of facts [in that case] was inadequate" on appeal). Instead, Martini essentially argues that transcripts are preferable to a statement of facts.

Martini relies on <u>Mayer v. City of Chicago</u>, 404 U.S. 189, 196 (1971), to support her argument that she was entitled to a court reporter and a transcript of the proceedings. In <u>Mayer</u>, the Supreme Court of the United States acknowledged that an "appellant cannot be denied a 'record of sufficient completeness' to permit proper consideration of his claims." <u>Id.</u> at 198. However, the Court cautioned that "this does not mean that [appellant] is automatically entitled to a full verbatim transcript." <u>Id.</u> The <u>Mayer</u> Court then noted that in <u>Draper v. Washington</u>, 372 U.S. 487 (1963), the Court had noted that a claim of insufficient evidence could not "be fairly judged without recourse to the trial record." <u>Id.</u> The <u>Mayer</u> Court continued, "the State of Washington did not undertake to carry its burden of showing that something less than a complete transcript would suffice." <u>Id.</u> at 198-99. Thus, because the record before the Court in <u>Draper</u> was not clear whether an agreed statement of facts would have been adequate, the Supreme Court vacated the lower court's decision. <u>Id.</u> at 199.

The <u>Draper</u> Court specifically held:

> [A] State need not purchase a stenographer's transcript in every case where a defendant cannot buy it. Alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise. A statement of facts agreed to by both sides, a full narrative statement based perhaps on the trial judge's minutes taken during trial or on the court reporter's untranscribed notes, or a bystander's bill of exceptions might all be adequate substitutes, equally as good as a transcript.

372 U.S. at 495 (internal citations omitted). Therefore, <u>Mayer</u> does not stand for the proposition that a court reporter and full verbatim transcript is mandatory. To the contrary, <u>Mayer</u> made

clear that an agreed statement of facts can constitute a "record of sufficient completeness" as required by the Constitution.

Thus, we hold that the audio recordings of the hearings coupled with the statement of facts approved by the circuit court pursuant to Rule 5A:8(d) served the "same functions as a transcript," both at trial and on appeal. See Britt, 404 U.S. at 227. Accordingly, the circuit court did not err in denying Martini's request for a court reporter.

Motions to Suppress the Evidence

Martini's second, third, and fourth assignments of error claim the circuit court erred in denying her various motions to suppress evidence including the certificate of blood analysis, the statements Martini made to police at the scene of the accident, and the fruits of her arrest, which she contends was not supported by probable cause.

In reviewing a trial court's denial of a motion to suppress, this Court views the evidence "in the light most favorable to the Commonwealth, granting to the Commonwealth all reasonable inferences fairly deducible from it." Sabo v. Commonwealth, 38 Va. App. 63, 69, 561 S.E.2d 761, 764 (2002). This Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*). "However, we consider *de novo* whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment." Hughes v. Commonwealth, 31 Va. App. 447, 454, 524 S.E.2d 155, 159 (2000) (*en banc*). Thus, "we determine whether the accused has met his burden to show that the trial court's ruling, when the evidence is viewed in the light most favorable to the Commonwealth, was reversible error." Roberts v. Commonwealth, 55 Va. App. 146, 150, 684 S.E.2d 824, 826 (2009).

Martini's second assignment of error asserts that the circuit court erred in declining to suppress the certificate of blood analysis because Martini claims her blood was taken in violation of the Fourth Amendment.

Drawing blood from a person accused of driving while intoxicated is a search within the meaning of the Fourth Amendment. See Missouri v. McNeely, 133 S. Ct. 1552, 1558 (2013). Because officers did not obtain a warrant before having Martini's blood drawn, the search is presumed illegal, unless an exception to the warrant requirement applies to this case. See United States v. Robinson, 414 U.S. 218, 224 (1973). In this case, the Commonwealth relies on Martini's consent as the requisite exception to the warrant requirement.

Code § 18.2-268.2(A) of Virginia's implied consent statute provides in pertinent part[2]:

> Any person, whether licensed by Virginia or not, who operates a motor vehicle upon a highway, as defined in § 46.2-100, in the Commonwealth shall be deemed thereby, as a condition of such operation, to have consented to have samples of his blood, breath, or both blood and breath taken for a chemical test to determine the alcohol, drug, or both alcohol and drug content of his blood, if he is arrested for violation of § 18.2-266 . . . within three hours of the alleged offense.

Put simply, a person driving on Virginia's roads has implicitly consented to a breath or blood test when he or she is arrested for driving while intoxicated. Pursuant to Code § 18.2-268.3, a driver who unreasonably refuses to take a blood or breath test pursuant to Code § 18.2-268.2 may be subjected to criminal or civil penalties. Code § 18.2-268.3(A) specifically provides:

> It shall be unlawful for a person who is arrested for a violation of [Code] § 18.2-266 . . . to unreasonably refuse to have samples of his blood or breath or both blood and breath taken for chemical tests to determine the alcohol or drug content of his blood as required by § 18.2-268.2 and any person who so unreasonably refuses is guilty of a violation of this section.

---

[2] The constitutionality of Virginia's implied consent statute is not at issue in this appeal.

However, this Court has made clear that although a defendant may seek to establish the reasonableness of his or her refusal to submit to a breath or blood test, such a showing would not invalidate his or her consent:

> The fact that under the Virginia statute an accused is afforded an opportunity to establish the reasonableness of his refusal does not operate to dilute the consent previously given, or convert that consent into a qualified or conditional one. The statute does excuse from [punishment for refusal to take] the test one whose refusal is reasonable[, such as] where a person's health would be endangered by the withdrawal of blood.

Goodman v. Commonwealth, 37 Va. App. 374, 384, 558 S.E.2d 555, 560 (2002) (quoting Deaner v. Commonwealth, 210 Va. 285, 292-93, 170 S.E.2d 199, 204 (1969)).

Martini claims that she did not voluntarily consent to having her blood drawn because she was in a "diminished mental and physical state" and because she was "told by law enforcement that she had already consented before her consent was requested."

Martini's argument ignores the holding in Goodman that "where the arresting officer has probable cause to believe an incoherent or unconscious driver has violated Code § 18.2-266, the implied consent law operates to permit the taking and testing of blood from that driver and that incoherence or unconsciousness does not constitute a refusal, reasonable or unreasonable, because consent is continuing." 37 Va. App. at 383, 558 S.E.2d at 560. Martini consented to the blood draw when she chose to drive her vehicle on a highway in the Commonwealth. Martini never rescinded her consent. In fact, she reiterated her consent at the hospital to Officer Walton after he informed her of the implied consent law. Thus, consistent with these authorities, we hold that where an individual consents to a blood draw by virtue of implied consent, an officer does not coerce consent simply by informing the individual of the implied consent statute. Accordingly, the circuit court did not err in declining to suppress the certificate of blood analysis.

Next, Martini's third assignment of error claims the circuit court erred by denying her motion to suppress her statements given to police at the scene because such statements were given in violation of Martini's constitutional rights. Specifically, Martini argues that her statements to police were not voluntary.

Whether a statement given is voluntary is ultimately a legal rather than a factual question, but subsidiary factual decisions are entitled to a presumption of correctness. Miller v. Fenton, 474 U.S. 104, 112 (1985). "In determining whether a statement or a confession was voluntary, the trial court must decide whether the statement was the 'product of an essentially free and unconstrained choice by its maker,' or whether the maker's will 'has been overborne and his capacity for self-determination critically impaired.'" Bottenfield v. Commonwealth, 25 Va. App. 316, 323, 487 S.E.2d 883, 886 (1997) (quoting Commonwealth v. Peterson, 15 Va. App. 486, 487-88, 424 S.E.2d 722, 723 (1992)). To make such determination, the trial court must consider "the defendant's age, intelligence, mental and physical condition, background and experience with the criminal justice system, the conduct of the police, and the circumstances of the interview." Id.

Martini conceded at the suppression hearing that she was not in custody at the time she spoke with police at the scene of the accident.[3] Neither Officer Tran nor Officer Walton restrained Martini's liberty or touched her during their encounter. Officer Tran and Officer Walton only briefly questioned Martini about her basic information and how the accident occurred, and did not question Martini while she was being treated for her injuries by medical personnel. At no point did Martini ever ask the officers to end their questioning. Notably, Martini's mother was also present during a portion of the discussion with the officers.

---

[3] At oral argument, Martini argued that the fact that she was handcuffed at the hospital was further evidence of coercion on the part of the police. However, on appeal, Martini only challenges the statements she made to Officers Tran and Walton at the accident scene.

In support of her argument that her statements were involuntary, Martini relies on two cases that are easily distinguishable. In <u>Mincey v. Arizona</u>, 437 U.S. 385, 398 (1978), the United States Supreme Court held that the defendant's statements were involuntary and therefore should have been suppressed. In that case, the defendant had arrived at the hospital "depressed almost to the point of coma," and was in the intensive care unit. <u>Id.</u> The defendant complained that pain in his leg was "unbearable," and he was unable to think clearly. <u>Id.</u> He was questioned while he was "lying on his back on a hospital bed, encumbered by tubes, needles, and breathing apparatus." <u>Id.</u> at 399. Despite the defendant repeatedly expressing his wish not to be interrogated, the officer continued to interrogate the defendant and only ceased questioning "during intervals when [the defendant] lost consciousness or received medical treatment" and then returned relentlessly to the questioning. <u>Id.</u> at 400-01.

Martini also relies on <u>Peterson</u>, 15 Va. App. 486, 424 S.E.2d 722, in which this Court upheld the trial court's suppression of a defendant's statements as involuntary. In that case, the defendant made statements to police when the defendant "was in pain, his vision blurred, and [] was unable to understand 'everything that was going on around' him as a result of injuries he suffered." <u>Id.</u> at 488, 424 S.E.2d at 723. Additionally, the defendant had ingested cocaine, was having problems breathing, experiencing chest pains, and was connected to a heart monitor in an ambulance en route to the hospital when the police questioned him. <u>Id.</u> at 488, 424 S.E.2d at 723-24.

Unlike the defendants in <u>Mincey</u> and <u>Peterson</u> who were severely injured and complaining of extreme pain, Martini was coherent and complained of neck and back pain, with no other apparent injuries. Further, unlike the defendant in <u>Mincey</u> who repeatedly requested the questioning cease, Martini never asked the officers to end their questioning. In contrast to the defendant in <u>Peterson</u> who was questioned in the ambulance while he was disoriented and

confused, Officer Tran and Officer Walton briefly questioned Martini about her health and the cause of the accident prior to her transport to the hospital. The record does not support Martini's contention that her statements to the officers were not made voluntarily, or that her will was overborne by the officers. Therefore, the circuit court did not err in declining to suppress Martini's statements to the officers.

Martini's fourth assignment of error argues the circuit court erred in "denying [her] Motion to Suppress the Arrest for Lack of Probable Cause." We disagree.

"In determining whether probable cause exists courts will test what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control." Hollis v. Commonwealth, 216 Va. 874, 877, 223 S.E.2d 887, 889 (1976). "As an articulated legal standard, probable cause deals with probabilities concerning the factual and practical considerations in everyday life as perceived by reasonable and prudent persons. It is not predicated upon a clinical analysis applied by legal technicians." Lawson v. Commonwealth, 217 Va. 354, 358, 228 S.E.2d 685, 687 (1976). Thus, "[p]robable cause exists when the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." Mazza v. Commonwealth, 16 Va. App. 907, 911, 434 S.E.2d 339, 342 (1993).

In the case at bar, Martini's car had collided with the back of Rhys Davies's vehicle when Davies had slowed down in the "right turn only" lane to execute a right turn. When Officer Tran arrived on the scene, he noted that Martini's pupils were dilated and her speech was slurred. Martini informed Officer Tran that she had taken her prescription drugs that day. She later told Officer Walton that her medications make her drowsy and confirmed that she had taken her prescription medications that day. Officer Tran observed two bottles of medicine prescribed to

- 10 -

Martini on the front passenger's seat. The bottles only contained a few pills, despite being filled at the pharmacy only days before the accident. At the scene, the medic noted that Martini's answers did not appropriately follow his questions. At the hospital, both Officer Tran and Officer Walton observed that Martini had difficulty walking.

We hold that based upon his observations of Martini at the hospital, the significant number of pills missing from the prescription bottles recovered from her car, Martini's dilated pupils, and her slurred speech, Officer Walton had probable cause to arrest Martini for DWI.

<u>Sufficiency of the Evidence</u>

Martini's fifth assignment of error states that the circuit court erred by denying her renewed motion to strike the evidence because the Commonwealth failed to prove that Martini was under the influence of narcotics.

When the sufficiency of the evidence is challenged on appeal, "[t]his Court 'must examine the evidence that supports the conviction and allow the conviction to stand unless it is plainly wrong or without evidence to support it.'" <u>Commonwealth v. McNeal</u>, 282 Va. 16, 20, 710 S.E.2d 733, 735 (2011) (quoting <u>Vincent v. Commonwealth</u>, 276 Va. 648, 652, 668 S.E.2d 137, 139-40 (2008)). The relevant inquiry is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Kelly v. Commonwealth</u>, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979)). This Court's deference to the fact finder "applies not only to findings of fact, but also to any reasonable and justified inferences the fact-finder may have drawn from the facts proved." <u>Sullivan v. Commonwealth</u>, 280 Va. 672, 676, 701 S.E.2d 61, 63-64 (2010).

It is well established that "the reasonable-hypothesis principle is not a discrete rule unto itself." <u>Haskins v. Commonwealth</u>, 44 Va. App. 1, 8-9, 602 S.E.2d 402, 405-06 (2004). "The statement that circumstantial evidence must exclude every reasonable theory of innocence is

simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003). Thus, the principle "does not add to the burden of proof placed upon the Commonwealth in a criminal case." Id. It merely "reiterates the standard applicable to every criminal case." Pease v. Commonwealth, 39 Va. App. 342, 360, 573 S.E.2d 272, 280 (2002) (*en banc*) (citation omitted). Further, whether the hypothesis of innocence is reasonable is itself a "question of fact." Emerson v. Commonwealth, 43 Va. App. 263, 277, 597 S.E.2d 242, 249 (2004) (citation omitted). "Merely because defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded. What weight should be given evidence is a matter for the [fact finder] to decide." Miles v. Commonwealth, 205 Va. 462, 467, 138 S.E.2d 22, 27 (1964).

Code § 18.2-266 makes it unlawful for any person to drive or operate any motor vehicle "while such person is under the influence of any narcotic drug or any other self-administered intoxicant or drug of whatsoever nature, or any combination of such drugs, to a degree which impairs his ability to drive or operate any motor vehicle, engine or train safely" or "while such person is under the combined influence of alcohol and any drug or drugs to a degree which impairs his ability to drive or operate any motor vehicle, engine or train safely."

Martini contends that the Commonwealth failed to exclude her reasonable hypothesis of innocence—specifically that her brakes failed and that her speech and issues walking were symptoms of her multiple sclerosis.

Martini relies on Clemmer v. Commonwealth, 208 Va. 661, 159 S.E.2d 664 (1968), as support for her argument that the evidence was insufficient to prove that Martini was under the influence of narcotics. However, Clemmer is easily distinguishable from the case at bar. In Clemmer, the defendant drove his vehicle through a fence. Id. at 662, 159 S.E.2d at 665. The

owner of the land approached Clemmer, and he noticed that Clemmer was staggering and stuttering, and later troopers confronted Clemmer and noted he was belligerent and unsteady. However, there was no evidence introduced at trial that Clemmer had consumed intoxicants. Id. at 662-66, 159 S.E.2d at 665-67. There was no odor of alcohol detected, no presence of alcohol discovered, and no blood test to confirm the presence of alcohol in Clemmer's system. Id.

In this case, Martini struck the back of Davies's vehicle when he had slowed down in the right turn lane to make a right turn. Martini admitted to taking medication the day of the accident and told Officer Walton that the medicine makes her drowsy. Two bottles of medicine prescribed to Martini were found on the front passenger's seat. These bottles contained only a few pills in each, despite the fact that they had been recently filled. While in the ambulance, Martini asked that her mother "grab her pills from her car." Officer Tran noted that Martini's speech was "slurred" and her pupils were "large and dilated" when he spoke with her at the scene. The medic treating Martini recalled that her answers did not follow his questions.

Officer Tran observed Martini at the hospital and noticed that she "had trouble walking when she got up to use the restroom," which was "15 to 20 feet" from her hospital bed. Hospital staff assisted Martini, who was "swaying from side to side and using the wall for stability." Similarly, Officer Walton also observed that Martini had difficulty standing up and needed assistance to walk to the restroom.

Expert testimony from Dr. Mercer and Dr. O'Neal established the results of Martini's blood analysis. Dr. O'Neal explained that "the .41 level of Alprazolam was very high, and that even with higher doses, the level would usually top out around a .1." Dr. O'Neal also found that Martini's "1.2 level of Diazepam was at the high end of the therapeutic range, and could be seen with a sustained regiment [sic] for a long period of time." Dr. O'Neal opined that "the drugs found in Ms. Martini's blood at those levels are consistent with drowsiness, slowed reflexes,

slowed reaction time, lethargy, slurred speech, slowed processing, slowed decision making, extreme difficulty with balance, and effects on coordination."

Thus, unlike Clemmer, in which there was no evidence that Clemmer had consumed intoxicants, the record in this case provides ample evidence that Martini had consumed prescription medication, that she admitted made her drowsy. The jury was fully in its discretion when it found, based on the evidence presented at trial, that the medication Martini admitted to taking the day of the accident resulted in her being under the influence of an intoxicant. Furthermore, this Court cannot say that the jury's conclusion that Martini was under the influence of her prescription drugs to a degree that impaired her ability to operate her vehicle safely was "plainly wrong or without evidence to support it." Hickson v. Commonwealth, 258 Va. 383, 387, 520 S.E.2d 643, 645 (1999).

Finding that the audio recordings and statement of facts were functionally equivalent to a transcript, we find that the circuit court did not err in allowing Martini to audio record the proceedings in lieu of providing a court reporter and transcript. Further, concluding that Martini's constitutional rights were not violated during her interaction with the officers and subsequent arrest, we affirm the circuit court's denial of Martini's various motions to suppress the evidence. Finally, finding there to be sufficient evidence in the record to support Martini's conviction for DWI, second offense within ten years, in violation of Code § 18.2-266, we affirm Martini's conviction.

Affirmed.